Filed 6/30/22  P. v. Yang CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>KER YANG,<br><br>    Defendant and Appellant. | F081990<br><br>(Super. Ct. No. F20901012)<br><br>**OPINION** |

-ooOoo-

**THE COURT**[*]

APPEAL from a judgment of the Superior Court of Fresno County.  F. Brian Alvarez, Judge.

William J. Capriola, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill and Kari Ricci Mueller, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Hill, P. J., Franson, J. and Peña, J.

Defendant Ker Yang contends on appeal that (1) his sentence must be vacated and the case remanded for resentencing because the trial court relied on an improper aggravating factor when imposing the upper term on count 1; (2) the nonvisitation order must be amended to apply only to A.V., and to terminate upon her 18th birthday; and (3) the sentence must be vacated and the case remanded for resentencing in light of Senate Bill No. 567's (2021–2022 Reg. Sess.) (Senate Bill 567) amendments to Penal Code section 1170, subdivision (b).[1]

We order the trial court to amend the nonvisitation order to apply only to A.V., and to terminate upon her 18th birthday. We also vacate defendant's sentence and remand for resentencing in light of amended section 1170, subdivision (b). In all other respects, we affirm.

## PROCEDURAL SUMMARY

On February 26, 2020, the Fresno County District Attorney filed an information charging defendant with sexual penetration by force of Jane Doe I, a child under the age of 14 years (§ 289, subd. (a)(1)(B); count 1); sexual penetration of Jane Doe I, a child 10 years of age or younger (§ 288.7, subd. (b); count 2); and lewd conduct upon Jane Doe II, a 14- or 15-year-old child (§ 288, subd. (c)(1); count 3).[2]

On October 1, 2020, a jury found defendant guilty on all three counts.

On October 30, 2020, the trial court sentenced defendant to a term of 12 years, eight months, plus 15 years to life in prison as follows: 12 years (the upper term), on count 1; an indeterminate term of 15 years to life, consecutive, on count 2; and eight months (one-third the middle term), consecutive, on count 3. A nonvisitation order

---

[1] All statutory references are to the Penal Code.

[2] On September 18, 2020, continuous sexual abuse of Jane Doe I, a child under the age of 14 years (§ 288.5, subd. (a)), originally count 1, was dismissed at the request of the prosecutor, and the remaining three charges, counts 2, 3, and 4, were respectively renumbered 1, 2, and 3.

was also issued against defendant ordering no visitation between defendant and A.V. and L.V.

On October 30, 2020, defendant filed a notice of appeal.

## FACTUAL SUMMARY

Defendant's wife, Payao, has four younger sisters, L.V., S.V., G.V., and A.V. When Payao's sisters were elementary, middle and high school age, they would frequently babysit defendant and Payao's young children.

Payao's youngest sister, A.V., started helping babysit defendant's children when she was in kindergarten. A.V. frequently spent the night at defendant's house after babysitting the children.

When A.V. was in kindergarten, defendant started coming into the bedroom while she slept and would touch her breast area and rub her vagina. His conduct escalated to digital penetration of A.V. "[w]henever he got the chance"—more than 30 times—from the time she was in first grade until she was in seventh grade. Defendant also began to rape A.V. while she was in elementary school. A.V. would awake to defendant touching her breasts and vagina before he inserted his penis into her vagina. She always pushed him away and told him to stop but he would not. This happened "[t]oo many [times] to count," but more than 20 or 30 times. When she would refuse to go in the bedroom with him while she was babysitting, he would force her, despite his own children sometimes trying to stop him and keep the door open. Defendant's minor son testified at trial that on one occasion he was able to jimmy the bedroom door lock and open it enough to witness defendant on top of A.V., covering her mouth and trying to remove her clothes while A.V. struggled and tried to push defendant away. A.V. moved out of town for her seventh grade school year, but upon her return the following year, defendant again raped and assaulted her. She never told her parents or Payao because she was scared, worried about her family, and did not want to cause trouble.

3.

Defendant also sexually molested L.V. while she was a young teenager babysitting his children. When she was approximately 14 years old, she awoke to one of defendant's hands under her shirt squeezing her breasts. She pretended to be asleep, hoping he would stop, but instead, he began rubbing her vagina over her underwear. He eventually stopped when she turned her body away from him. On another occasion, she awoke when one of her other sisters, S.V., who was sleeping in the same room as L.V., woke up and saw defendant about to touch L.V. as she was sleeping and asked defendant, " 'What the hell are you doing?' " He told the girls he was not doing anything and left the room.

In August 2018, defendant's minor son told his mother, Payao, that defendant had "S-E-X to [A.V.]." He had told her this once the year prior, but she had dismissed it when she confronted defendant and he claimed their son was lying. However, after their son's August 2018 disclosure, Payao called her sister, L.V., who was with A.V. at the time, and asked A.V. if defendant had had sex with her. A.V., who was thirteen years old at the time, initially said nothing, but started crying and eventually admitted that defendant had sexually assaulted her. Payao then confronted defendant, who admitted having sex with A.V. Later that day, L.V. and A.V. went to Payao and defendant's house, and A.V. told Payao that defendant had been sexually assaulting her and raping her for as long as she could remember. L.V. was extremely upset and called 911 to report that defendant had molested A.V. After interviewing L.V., A.V., Payao, and defendant, defendant was transported to the Fresno Police headquarters, where he was interviewed by detectives and placed under arrest. During his interview by police, defendant admitted that he made a "mistake" by having sexual intercourse with A.V. and sexually assaulting G.V. on numerous occasions, but denied touching S.V. and L.V. and denied having sexual intercourse with anyone other than A.V.

During a break in the interview, defendant wrote a letter to Payao apologizing and telling her he still loved her, which he crumpled up. He then wrote her another letter in which he asked Payao to be strong and admitted he had not been a good father or

4.

husband, that he "wish[ed] that this never had happened so [they could] still be a family," and that he wanted to fix his mistake so he could watch his kids grow up. In the second letter, he addressed Payao's sisters, A.V., L.V., S.V., and G.V., writing that he was sorry for his "mistake" and asked for their understanding and forgiveness.

A.V. and L.V. testified to the events discussed above at trial. S.V. and Payao's brother's wife, C.Y., also testified at trial that defendant touched their breasts while they were sleeping on various occasions when they were between the ages of 11 and 20 years old, and Payao testified that she witnessed defendant touch her sister G.V.'s breasts while she was sleeping also.

## DISCUSSION

### I. Nonvisitation Order

Defendant contends the nonvisitation order imposed pursuant to section 1202.05 must be amended to reflect that it only applies to one of the victims, A.V., and that it ends on her 18th birthday.

At sentencing, the trial court broadly ordered no visitation between defendant and his victims in this case, pursuant to section 1202.05. At the time of trial, L.V. was 22 years old. Neither the oral pronouncement by the trial court nor the minute order state that the nonvisitation order ends when A.V. reaches the age of 18.

Nonvisitation orders pursuant to section 1202.5 are limited to victims who are minors. (§ 1202.05; *People v. Ochoa* (2011) 192 Cal.App.4th 562, 565 [§ 1202.05, subd. (a) encompasses "only child victims of enumerated sex offenses for which a defendant was sentenced to prison"].) "Nothing in the legislative history [of section 1202.05] suggests any intention or expectation that the act would affect visitation between adult victims and their childhood abusers. On the contrary, the Legislature clearly contemplates that only children would be affected.… Once a victim has reached [the age of 18,] the act has no effect on her or his ability to visit the defendant in prison." (*People v. Scott* (2012) 203 Cal.App.4th 1303, 1323.)

5.

As L.V. was over the age of 18 when the trial court imposed the nonvisitation order pursuant to section 1202.05, we order the trial court to amend the nonvisitation order to reflect that it only applies to A.V., and that it will terminate upon A.V.'s 18th birthday.

## II.    Senate Bill 567

Defendant contends the trial court's sentence to the upper term on count 1 should be vacated and the case remanded in light of Senate Bill 567's amendments to section 1170, subdivision (b).[3]  The People argue that although Senate Bill 567's amendments to section 1170, subdivision (b), apply here, vacating defendant's sentence and remanding the case for resentencing is unnecessary because any error is harmless, as the jury would have found at least one of the aggravating factors relied upon by the trial court true beyond a reasonable doubt.  As we explain below, whether the jury would have found true beyond a reasonable doubt the facts underlying *at least one* of the aggravating circumstances is not the relevant question in this context.  Instead, to find that the error was harmless we would have to conclude:  (1)(a) beyond a reasonable doubt that the jury would have found beyond a reasonable doubt that the facts underlying at least one aggravating circumstance was true and (1)(b) that there is no reasonable probability the jury would not have found the remaining aggravating circumstance(s) true beyond a reasonable doubt, and if all circumstances are not found true according to their respective standards, (2) that there is no reasonable probability that the trial court would have imposed a sentence other than the upper term in light of the aggravating circumstances

---

[3]    Defendant also contends that the trial court relied on an improper aggravating factor, that defendant lacked remorse for his victims, in sentencing defendant to the upper term in count 1, but we will not address this argument, as the trial court's sentence to the upper term in count 1 is now vacated for the trial court to resentence defendant in light of Senate Bill 567's amendments to section 1170, subdivision (b).

provable from the record as determined in the prior steps.[4]  We vacate defendant's sentence and remand the case for resentencing.

## A.    Background

On October 1, 2020, a jury found defendant guilty on counts 1 through 3.  The trial court sentenced defendant to the upper term of 12 years on count 1.

Prior to sentencing, the probation department recommended two circumstances in aggravation and one circumstance in mitigation to the trial court.  The probation officer recommended that defendant be sentenced to 12 years (the upper term) for count 1.

At the sentencing hearing, the trial court sentenced defendant in accordance with the probation officer's recommendation, stating:

> "The judgment the Court's going to give … is not one that anyone would classify as being short.  These types of crimes necessarily involve lengthy prison terms, it's the society and our Legislature's view that these types of crimes are the most heinous, crimes against children.  More so when they're repetitively done as the evidence set forth in this case.  I am cognizant that there may have been cultural issues involved with regards to being married fairly early on and maybe having access to younger people.  But I'm also cognizant of the fact that notwithstanding that culture, a five or six-year-old child is not someone's sexual play thing.  And what the Court heard in this case was quite disturbing.  The sentence the Court is going to pronounce demonstrates that it is one of the most heinous types of offenses that a person could commit, notwithstanding their lack of criminal history.  Many times in these types of cases people who commit these crimes have no criminal history.  It's because they haven't been caught.

> "Probation is denied [to] the [d]efendant because he is ineligible for a grant of probation pursuant to … [s]ection 1203.065.  After a consideration of the circumstances both in mitigation and in aggravation as follows:  The [c]ourt notes with regards to [c]ount [1], that the [d]efendant took advantage of a position of trust and confidence to commit the offenses.  In mitigation, the [c]ourt finds that [d]efendant has no prior record or any significant record of criminal conduct.  The [c]ourt notes that there's been a

---

**4**    In order to reach the second step, the reviewing court must conclude beyond a reasonable doubt that the jury would have found at least one aggravating circumstance true beyond a reasonable doubt.  Otherwise, the sentence violates the Sixth Amendment.

lack of real remorse by [d]efendant as a circumstance in aggravation. He never once apologized for the harm that he caused to the children, his sister-in-laws, granted this is not a [f]amily [c]ourt, but the harm that he caused caused more harm than just the people that he victimized. It caused a rippling effect to other family members, both family members on both sides, frankly. The [c]ourt considers his lack of remorse to the victims in this case as a circumstance in aggravation. And, accordingly, the Court will order that he's to receive the upper term for [c]ount [1] of 12 years in state prison."

### B.    Law

On October 8, 2021, Senate Bill 567 was signed into law. It amends the determinate sentencing law, section 1170, subdivision (b), which delineates the trial court's authority to impose one of three statutory terms of imprisonment, known as the lower, middle, or upper terms, by making the middle term the presumptive sentence for a term of imprisonment, unless certain circumstances exist. (See Stats. 2021, ch. 731, § 1.3, adding § 1170, subd. (b)(1), (2).) Effective January 1, 2022, under the newly amended law, the trial court may impose an upper term sentence only where there are circumstances in aggravation, and the facts underlying all of the aggravating circumstances have been stipulated to by the defendant or found true beyond a reasonable doubt by a jury or court trial. (*Ibid*.)

Under amended section 1170, subdivision (b)(5), the trial court must "set forth on the record the facts and reasons for choosing the sentence imposed. The court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law." (§ 1170, subd. (b)(5).)

### C.    Analysis

Senate Bill 567 went into effect on January 1, 2022. Absent evidence to the contrary, the Legislature intends amendments to statutes that reduce the punishment for a particular crime to apply to all defendants whose judgments are not yet final on the amendment's operative date. (*People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, 307–308 [discussing *In re Estrada* (1965) 63 Cal.2d 740]; *People v. Brown* (2012) 54

Cal.4th 314, 323.) The "consideration of paramount importance" is whether the amendment lessens punishment. (*Estrada*, at p. 744.) If so, the "inevitable inference [is] that the Legislature must have intended that the new statute" apply retroactively. (*Estrada*, at p. 745.) As Senate Bill 567's amendments to section 1170, subdivision (b), lessen punishment, and there is no indication that the Legislature intended it to apply prospectively only, the new law must be retroactively applied. Therefore, the amendment to section 1170, subdivision (b), applies to all cases not final on Senate Bill 567's effective date. (*Estrada*, at pp. 745–746; *People v. Flores* (2022) 73 Cal.App.5th 1032, 1039.)

As a threshold matter, the parties agree that Senate Bill 567 is retroactive to cases not yet final on appeal pursuant to *Estrada*, and that defendant's case was not final on January 1, 2022. We agree.

Here, none of the facts underlying either of the two circumstances in aggravation cited by the trial court were admitted by defendant or presented to or found true by the jury. Nevertheless, the upper term was imposed on count 1. Defendant's sentence to the upper term on count 1 by the trial court is therefore not consistent with the requirements of Senate Bill 567's amendment to section 1170, subdivision (b).[5] Therefore, unless imposition of the upper term on count 1 was harmless, the sentence must be vacated and the matter must be remanded to the trial court for resentencing in compliance with section 1170, subdivision (b).

The People first contend that any error was harmless because the jury would have found true at least one of the relied upon aggravating circumstances had they been

---

[5] In the following harmless error discussion, we refer to section 1170, subdivision (b) "error." However, we note that at the time the trial court sentenced defendant, it correctly applied the law. Accordingly, while we refer to section 1170, subdivision (b) "error," we are mindful that the trial court complied with the applicable law at the time of sentencing.

submitted to a jury. For that proposition, they rely on *People v. Flores* (2022) 75 Cal.App.5th 495 (*Flores*), which applied the harmless-beyond-a-reasonable-doubt standard of harmless error from *Chapman v. California* (1967) 386 U.S. 18 as adapted to the context of violations of the Sixth Amendment right to a jury trial on aggravating circumstances by *People v. Sandoval* (2007) 41 Cal.4th 825, 838–839 (*Sandoval*).[6] (*Flores*, at pp. 500–501.) *Flores* articulated the harmless error standard in the Senate Bill 567 error context as follows: " '[I]f a reviewing court concludes, beyond a reasonable doubt, that the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true *at least a single aggravating circumstance* had it been submitted to the jury,' the error is harmless." (*Flores*, at p. 500, italics added.) We respectfully disagree with the People and *Flores* that *Sandoval* applies in this context. A reviewing court concluding beyond a reasonable doubt that the jury would have found the facts underlying *a single circumstance in aggravation* true beyond a reasonable doubt is insufficient to conclude that any error under section 1170, subdivision (b) was harmless.

To explain our disagreement with *Flores*, we consider the origin of the harmless error standard it applied. In *Cunningham*, the Supreme Court held that California's determinate sentencing law (as it existed from 1977 to 2007) violated the Sixth Amendment right to a jury trial because it permitted a trial judge to determine facts (other than a prior conviction) that would allow imposition of a sentence in excess of the statutory maximum.[7] (*Cunningham*, *supra*, 549 U.S. at pp. 275–276.) As *Cunningham*

---

[6]     *Sandoval*, as we explain in more detail below, considered the standard for harmless error in the context of *Cunningham v. California* (2007) 549 U.S. 270 (*Cunningham*) error—where a sentence in excess of the statutory maximum sentence was imposed under California's former determinate sentencing law without submitting the facts authorizing such a sentence to a jury.

[7]     In the Sixth Amendment context, the statutory maximum " 'is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings.' " (*Cunningham*, 549 U.S. at p. 275.)

explained, the Supreme Court had long held that any fact that permitted imposition of a sentence beyond the statutory maximum had to be proved to a jury beyond a reasonable doubt. (*Id*. at p. 281.) Under the California determinate sentencing law, a statutory presumption existed that " '[t]he middle term [would] be selected unless imposition of the upper or lower term [was] justified by circumstances in aggravation or mitigation.' " (*Id*. at p. 278.) Under the then-existing statutory scheme, those circumstances in aggravation or mitigation—and the underlying facts related to those circumstances— were to be determined by the trial court, not the jury. (*Ibid*.) The Supreme Court therefore determined that the imposition of an upper term without having the facts underlying the aggravating circumstances proved to a jury beyond a reasonable doubt violated the Sixth Amendment. (*Id*. at p. 293.)

In *Sandoval*, our Supreme Court considered whether an upper-term sentence imposed pursuant to the pre-*Cunningham* determinate sentencing law—i.e., imposed based on judicial findings of fact on circumstances in aggravation—was harmless error under the Sixth Amendment. (*Sandoval*, *supra*, 41 Cal.4th at p. 837.) It explained that the trial court had relied upon multiple aggravating circumstances, none of which had been proved to a jury, admitted by the defendant, or based on the fact of a prior conviction. (*Id*. at pp. 837–838.) The upper-term sentence therefore violated the defendant's Sixth Amendment rights under *Cunningham*. The *Sandoval* court then considered whether the violation was harmless. To that end, it articulated the following standard: "if a reviewing court concludes, beyond a reasonable doubt, that the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true at least a single aggravating circumstance had it been submitted to the jury, the Sixth Amendment error properly may be found harmless." (*Sandoval*, at p. 839.) In the Sixth Amendment context, the issue was whether the " 'defendant [was] *eligible* for the upper term' "; the trial court's consideration of additional circumstances not proved to a jury was not a federal constitutional question. (*Sandoval*, at p. 839.)

11.

As noted, in *Flores*, the Court of Appeal for the First District, Division Three extended the standard for harmless error applied in the Sixth Amendment context in *Sandoval* to section 1170, subdivision (b)(2) error.[8] (*Flores*, *supra*, 75 Cal.App.5th at pp. 500–501.) The Court of Appeal for the Fourth District, Division One disagreed with *Flores* on that point. (*People v. Lopez* (2022) 78 Cal.App.5th 459, 465–468 (*Lopez*).)

The court in *Lopez* agreed with *Flores* that section 1170, subdivision (b)(2) error is subject to a harmless error analysis: "[W]here a sentencing factor must be found true by a jury beyond a reasonable doubt and the court fails to submit that factor to the jury, the error in the court's reliance on that fact may be subject to harmless error review as to whether the lack of a finding by the jury was prejudicial .…" (*Lopez*, *supra*, 78 Cal.App.5th at p. 465.) But *Lopez* disagreed with *Flores* on the correct standard for harmlessness. Instead of the *Sandoval* harmless error standard, the *Lopez* court applied the following two-part standard for harmlessness: First, "[i]n order to conclude that the trial court's reliance on improper factors that were not found true by a jury[,] … admitted by [the defendant, or based on certified records of conviction] was not prejudicial, [the reviewing court] would have to conclude beyond a reasonable doubt that a jury would have found true beyond a reasonable doubt *every factor on which the court relied*, because the amended statute requires that every factor on which a court intends to rely in imposing an upper term, with the exception of factors related to a defendant's prior conviction(s), have been admitted by the defendant or proven to a jury (see § 1170, subd. (b))." (*Lopez*, at pp. 465–466.) According to *Lopez*, if that conclusion is made, the defendant has suffered no prejudice. (*Id*. at p. 467 & fn. 11.) If not, the reviewing court "then consider[s] the second question, which is whether [it] can be certain, to the degree required by *People v. Watson* (1956) 46 Cal.2d 818, 836 [(*Watson*)], that the trial court

---

[8]     The *Flores* court did not explain why it concluded that the harmless error test applied in *Sandoval* applies in this context.

12.

would nevertheless have exercised its discretion to select the upper term if it had recognized that it could permissibly rely on only a single one of the aggravating factors, a few of the aggravating factors, or none of the aggravating factors, rather than all of the factors on which it previously relied.  If the answer to both of these questions is 'no,' then it is clear that remand to the trial court for resentencing is necessary." (*Lopez*, at p. 467, fn. 11.)

Lopez reasoned it is not enough that the reviewing court conclude that a trial court was *permitted* to impose the upper term because the jury would have found true a single aggravating circumstance beyond a reasonable doubt; whether the trial court *could have* imposed the upper term did not completely resolve the issue.  (*Lopez*, *supra*, 78 Cal.App.5th at p. 467.)  Instead, when a reviewing court concludes beyond a reasonable doubt that a jury would have found true fewer than all the aggravating circumstances beyond a reasonable doubt, it must still ask whether it is reasonably probable the trial court "*would have exercised its discretion*" to impose a sentence less than the upper term in the absence of the unproved aggravating circumstance(s).  (*Ibid*.)

We agree with the *Lopez* court that a reviewing court finding beyond a reasonable doubt that the jury would have found a single aggravating circumstance true beyond a reasonable doubt is insufficient to conclude that the error was harmless.  In other words, we disagree with *Flores* that *Sandoval* is applicable in this context.  We further agree that the second step of the *Lopez* analysis—considering whether the trial court would have imposed a lesser term in absence of the aggravating circumstances not provable on the record before the reviewing court—is necessary.  To find that section 1170, subdivision (b) error is harmless when fewer than all of the circumstances relied upon by the trial court could have been proved to the jury, we must determine whether the trial court would nevertheless have imposed the upper term based on the remaining aggravating circumstances.

Despite our agreement with *Lopez* on the majority of the standard it articulated, we are unconvinced that the *Chapman* standard of harmless error—applicable to errors implicating federal constitutional rights—must be applied to *all* aggravating circumstances in the *Lopez* court's first step. *Lopez* does not provide a clear explanation for why the *Chapman* standard for harmless error applies to all aggravating circumstances. Indeed, the only citation that the *Lopez* court provides for the proposition that *Chapman* applies to every circumstance is citation to section 1170, subdivision (b), itself. While *Sandoval* directs that at least one aggravating factor must be proved to the *Chapman* harmless error standard to satisfy the Sixth Amendment (i.e., for it to be *permissible* for the trial court to impose the upper term consistent with the Sixth Amendment), ordinary errors of state law are subject to review pursuant to *Watson*, *supra*, 46 Cal.2d 818.[9] (*People v. Breverman* (1998) 19 Cal.4th 142, 171 [when a state statutory right to a jury determination is violated, such error "is state law error alone, and thus subject, under article VI, section 13 of the California Constitution, to the *Watson* harmless error test"; "the state-created right to jury determination" does not implicate federal due process interests].)

We note that the *Chapman* standard of harmless error is compelled when an element of an offense or a sentencing factor necessary to impose a sentence above the statutory maximum is not presented to the jury. (*Washington v. Recuenco* (2006) 548 U.S. 212, 220 [firearm enhancement sentencing factor harmless error is decided pursuant to *Chapman*]; *People v. French* (2008) 43 Cal.4th 36, 52–53 [applying only *Chapman*

---

[9]     The test under *Watson* is whether, " 'after an examination of the entire cause, including the evidence,' [the reviewing court] is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Watson*, *supra*, 46 Cal.2d at p. 836.) In this context, the question for the reviewing court would be whether there is a reasonable probability that the trial court would not have found the aggravating circumstance(s) true beyond a reasonable doubt.

14.

where the trial court imposed the upper term based on *one* aggravating circumstance and that circumstance was not proved to the jury].) A fact that is *necessary* to impose a sentence above the statutory maximum must be proved to a jury beyond a reasonable doubt. However, as *Sandoval* has made clear, when multiple aggravating circumstances not proved to the jury are relied upon by a trial court in imposing the upper term, the reviewing court must only conclude beyond a reasonable doubt that *one* of those circumstances would have been found true by the jury beyond a reasonable doubt to avoid offending the Sixth Amendment. (*Sandoval*, *supra*, 41 Cal.4th at p. 839 [so long as a defendant is eligible for the upper term by virtue of facts that have been established consistently with Sixth Amendment principles, the federal Constitution permits the trial court to rely upon any number of aggravating circumstances in exercising its discretion to select the appropriate term by balancing aggravating and mitigating circumstances, regardless of whether the facts underlying those circumstances have been found to be true by a jury].) Accordingly, one aggravating circumstance must be reviewed pursuant to *Chapman*, but the remaining aggravating circumstances involve only a state-created right to a jury trial that must be reviewed pursuant to *Watson*.

In sum, we think the correct standard for harmless error lies between the standards articulated in *Flores* and *Lopez*; *Flores* sets too low a standard for harmlessness and *Lopez* too high. We instead apply a version of the standard articulated in *Lopez*, modified to incorporate *Watson* in the first step: The reviewing court determines (1)(a) beyond a reasonable doubt whether the jury would have found one aggravating circumstance true beyond a reasonable doubt and (1)(b) whether there is a reasonable probability that the jury would have found any remaining aggravating circumstance(s) true beyond a reasonable doubt. If the aggravating circumstances would have been proved to the respective standards, any error was harmless. If not, we move to the second step of *Lopez*, (2) whether there is a reasonable probability that the trial court would have imposed a sentence other than the upper term in light of the aggravating circumstances

15.

provable from the record as determined in the prior steps. If the answer is no, the error was harmless. If the answer is yes, we vacate the sentence and remand for resentencing consistent with section 1170, subdivision (b).

With that standard in mind, we revisit the aggravating circumstances relied upon by the trial court.

First, we must determine beyond a reasonable doubt whether the jury would have found one aggravating circumstance true beyond a reasonable doubt. Here, the jury did not make a specific finding as to the facts underlying the first aggravating circumstance, that defendant used a position of trust to commit his offenses. However, on count 1, the jury found beyond a reasonable doubt at trial that defendant was A.V.'s much-older brother-in-law and that he sexually assaulted A.V. between August 1 and August 18, 2018, while he was employing her as a babysitter for his children.[10] Because of this, we conclude beyond a reasonable doubt that, had the issue of whether he used a position of trust to commit his offenses been submitted to the jury, the jury would have assessed the facts underlying this first aggravating factor based on the evidence heard at trial about A.V's and defendant's respective ages, familial relationship, and his position as her employer, in the same manner as the trial court, to find beyond a reasonable doubt that defendant used his position of trust with A.V. to commit his offenses.

As we conclude beyond a reasonable doubt that one aggravating circumstance would have been found true beyond a reasonable doubt had it been submitted to the jury, we next must determine whether we can conclude that there is no reasonable probability that the jury would not have found the remaining aggravating circumstance true beyond a reasonable doubt. Here, the jury did not make a specific finding as to the facts underlying the second aggravating circumstance cited by the trial court, that defendant

---

**10**     The charge against defendant in count 1 was sexual penetration by force of Jane Doe I (A.V.), a child under the age of 14 years (§ 289, subd. (a)(1)(B)) between August 1 and August 18, 2018.

16.

lacked remorse for his victims.  However, unlike the first aggravating factor, we cannot conclude that the jury would have assessed the facts underlying the second aggravating circumstance, that defendant lacked remorse for his victims, in the same manner as the trial court.  Unlike the first aggravating factor, this factor encompasses evidence that a jury may have assessed in any number of different ways.

Significantly, as to defendant's lack of remorse for the victims, the jury heard evidence that defendant wrote a letter during his police interview that included an apology to his victims, including A.V.  In that letter, defendant stated, " 'I will fix my mistake .…  To all the persons in the past that I have make mistake or touched them, sorry to [G.V.], sorry to [S.V.], sorry to [L.V.], sorry to [B.], and so, so sorry to [A.V.] for what I have done to you.  Sorry, sorry, sorry.…  I don't know how to put in word to explain my feeling and my mistake.…  I wanted to said sorry to all the people that around me, include friend and family for my mistake.…  Sorry to [Payao's] sister .…  I make mistake.…' "  Furthermore, in his statement to the trial court during sentencing, defendant apologized for his "mistake," stating, "And that was my mistake in life," although that statement was directed to his wife and children in the context of explaining that he worked too much and spent too much time away from his wife and children.  He continued during his statement, "And I want to apologize to the people that I have brought their name to this case.  That's all.  Thank you very much."  As a result of this conflicting evidence in the record, we conclude that there is a reasonable likelihood the jury would not have found the remaining aggravating circumstance, that defendant lacked remorse for his victims, true beyond a reasonable doubt.

As there is a reasonable likelihood the jury would not have found this second aggravating circumstance true beyond a reasonable doubt, we must next determine whether there is a reasonable probability that the trial court would have imposed a sentence other than the upper term in light of the aggravating circumstances provable from the record as determined in the prior steps.  Here, the record does not

clearly indicate the trial court necessarily would have imposed the upper term for count 1 absent its consideration of both the aggravating circumstances it identified, as the trial court relied on both aggravating circumstances and did not state that either one of them, standing alone, would have caused it to make the same sentencing choice. When explaining its decision to impose the upper term, the trial court discussed the second aggravating circumstance, that defendant lacked remorse for his victims, more extensively than the first aggravating circumstance, that defendant used a position of trust to commit his offenses. As the record shows that the trial court relied on both aggravating circumstances when imposing the upper term, we must conclude there is a reasonable probability that the trial court would have imposed a term less than the upper term. Accordingly, the error was not harmless, and we must vacate and remand defendant's case for resentencing consistent with amended section 1170, subdivision (b).

We express no opinion on how the trial court should exercise its discretion in resentencing defendant under section 1170, subdivision (b).

## DISPOSITION

We instruct the trial court to amend the nonvisitation order to reflect that it applies only to A.V., and that it terminates upon A.V.'s 18th birthday. The sentence is vacated and the matter is remanded for resentencing in light of amended section 1170, subdivision (b). In all other respects, we affirm.

18.